UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

MARY F. JARRETT-JACKSON,
                      Plaintiff,         Case No.: 12-cv-11676
                                          Honorable Nancy G. Edmunds
      v.                                   Magistrate Judge David R. Grand

MICHAEL ASTRUE,
Commissioner of Social Security
                      Defendant.
_____/

**REPORT AND RECOMMENDATION ON
CROSS MOTIONS FOR SUMMARY JUDGMENT [27, 29]**

      Plaintiff Mary Jarrett-Jackson brings this action pursuant to 42 U.S.C. § 405(g), challenging a final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for survivor insurance benefits under Title II of the Social Security Act (the "Act"). Both parties have filed summary judgment motions which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.     RECOMMENDATION**

      For the reasons set forth below, the Court finds that although the Appeals Council erred in failing to consider supplemental evidence supplied to it within the time allotted for supplementation of the record, such error was harmless under the circumstances of this case. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [29] be GRANTED, Plaintiff's motion [27] be DENIED and that, pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's decision be AFFIRMED.

**II.    REPORT**

     **A.    Background**

Plaintiff became entitled to survivor benefits upon the death of her husband in October

2008 and she applied for benefits that same month. (Tr. 17). Her application was initially granted. *Id.* However, on December 9, 2008, Plaintiff was advised by the Social Security Administration that although she was entitled to survivor benefits, no benefits would be paid to her because the amount of a government pension she was receiving based on her own non-covered earnings, and the date she became eligible for retirement, subjected her to the application of a government pension offset provision ("GPO") in the statute. *Id.*[1] Plaintiff sought reconsideration of this decision on June 5, 2009. *Id.* On August 11, 2009, the administration affirmed its original decision, finding that the GPO applied to Plaintiff's case, resulting in a total reduction of survivor benefits. *Id.* Plaintiff then sought a hearing before an Administrative Law Judge ("ALJ"). *Id.*

The ALJ held two separate hearings. (Tr. 19). At the first hearing, on November 30, 2010, Plaintiff argued that the GPO was improperly applied to her case based on an incorrectly calculated eligible date of retirement. *Id.* She argued that her employer had incorrectly certified her eligible date of retirement as March 1984 because it had excluded from its calculation a nine-month period in which Plaintiff had been forced by her employer to take maternity leave. *Id.* She argued that the forced maternity leave policy had been deemed illegal and had since been abandoned by the employer. *Id.* She argued that removing the illegal forced maternity leave period from her record would result in an eligible retirement date of June 1983, which would exclude her from the automatic application of the GPO. *Id.* The ALJ continued the hearing to allow Plaintiff time to obtain a judgment in state court that the policy had been deemed illegal,

---

[1] Pursuant to 20 C.F.R. § 404.408(a), a claimant who receives a government pension from employment not covered by Social Security will be subject to a reduction in survivor benefits for each month that the pension is received. The regulation goes on to state that a claimant who became eligible for a government pension after June 1983 will be subject to a reduction (to zero if necessary) of his or her monthly spousal social security benefits "by two-thirds the amount of your monthly pension." *Id. See also Batista v. Sullivan*, 882 F.2d 1480, 1482 (9th Cir. 1989).

and to receive a certified corrected retirement eligibility date from her employer. *Id.*

At a second hearing on May 20, 2011, counsel for Plaintiff admitted that he had not filed the required state court action and had not obtained any documentation certifying a new retirement date. (Tr. 20). The ALJ determined that, in the absence of a corrected certification of Plaintiff's eligible retirement date, he was bound to the original certification, and because of that, the GPO applied to reduce Plaintiff's survivor benefits to zero. *Id.*

Plaintiff appealed this decision to the Appeals Council on August 8, 2011. (Tr. 72). Plaintiff attached to that appeal a copy of a statement from her employer certifying that she was eligible to retire on June 23, 1983. *Id.* On January 23, 2012, Plaintiff wrote a letter to the Appeals Council seeking expedited review of her claim due to an alleged impending foreclosure on her house. (Tr. 9-11).[2]

On April 16, 2012, before the Appeals Council took any action, Plaintiff filed a complaint in this Court seeking review of the decision denying her benefits. [1]. On April 24, 2012, this Court issued an Order to Show Cause why the case should not be dismissed for lack of subject matter jurisdiction, as a final decision of the Commissioner had not yet been rendered. [5]. Shortly thereafter, on May 9, 2012, the Appeals Council issued Plaintiff a "Notice of Appeals Council Action," acknowledging Plaintiff's submission of a corrected certification of eligible retirement date, but informing her that it was nevertheless planning to find that she would be subjected to the GPO due to the fact that her income exceeded that of her husband's at both the time her husband became eligible for benefits and at the time of his death. (Tr. 72-73).[3]

---

[2] In that letter, Plaintiff noted that she had previously sought expedited review in a letter dated November 16, 2011. (Tr. 9). However, that letter does not appear in the record.

[3] In cases where the claimant's eligibility date for retirement was after December 1982 but before July 1983, he or she must have also been receiving one-half support from the deceased

The Appeals Council then invited Plaintiff to submit "more evidence or a statement about the facts and the law in your case within 30 days of the date of this letter" to be considered in the Appeals Council's final decision. (Tr. 73). The notice further stated that the Council would "not act for 30 days" and that in order for additional evidence to be considered, Plaintiff "must send it to [the Council] within 30 days of the date of this letter." (Tr. 74). In addition, the notice provided that if Plaintiff desired a hearing before an ALJ, she must also make that request "in writing within 30 days from the date of this letter." *Id.* At the very end of the notice it stated, "If we do not hear from you within 30 days, we will assume that you do not want to send us more information, appear before the Appeals Council or have a hearing before an [ALJ]. We will then make our decision." *Id.*

On June 8, 2012, the last day of the 30-day period, Plaintiff allegedly sent a letter to the Appeals Council seeking a hearing before an ALJ and including an affidavit from Plaintiff stating that she spent approximately $10,000 a year between her 1995 retirement and her husband's death in 2008 secretly paying for his in-home care out of her salary. (Plf. Mot. Ex. 2; Am. Cplt. Ex. 1). She asserted that she had to pay for his care out of her funds alone because had he known about the cost of the care he would not have allowed it and he would then have been forced to go to a nursing home because Plaintiff was unable to care for him by herself at home. (*Id.*). The signature on the affidavit was also dated June 8, 2012. Plaintiff explains that:

> …these extraordinary costs are distinguishable from the normal and usual day to day expenses associated with the usual use of the word "support"

---

wage-earner in order to be exempt from the government pension offset provision. 20 C.F.R. § 404.408a(b)(2-3). This requirement could be met either at the time the wage-earner became entitled to retire, or at the time of his or her death. 20 C.F.R. § 404.408a(c)(2)(i-ii). The one-half requirement is only met if the wage-earner was making regular contributions to the claimant's support that equaled or exceeded one-half of the claimant's ordinary living costs, and the income available to the claimant for support purposes was one-half or less than his or her ordinary living costs. 20 C.F.R. § 404.367(b).

4

>       which includes food, clothing, shelter, utilities, transportation, etc. Because the extraordinary costs, which were paid exclusively by [Plaintiff], diminished her income from retirement benefits to an amount which was less than the retirement benefits received by [her husband], he provided more than 50% of her support in 2008 (and for many years prior thereto).

(*Id.*).[4]

One week later, on June 15, 2012, the Appeals Council rendered a decision in Plaintiff's case, apparently without having received, or at least without having considered, her affidavit. (Tr. 6-8).[5] The Appeals Council determined that Plaintiff was subject to the GPO due to the fact that her income exceeded her husband's income both at the time of retirement and at the time of his death, and thus her survivor benefits were reduced to zero. (*Id.*).

On July 23, 2012, the Commissioner filed a motion to dismiss Plaintiff's complaint, alleging that since the Appeals Council rendered a decision relying not on Plaintiff's eligible retirement date but on a separate application of the GPO, which was not challenged by Plaintiff's complaint, the complaint should be dismissed. [10]. Plaintiff then moved to amend her complaint to reflect a challenge to the Appeals Council's decision. [14]. That motion was granted, the Commissioner's motion was denied, and Plaintiff was permitted to amend her complaint to challenge the Appeals Council's application of the GPO to her case. [19]. Subsequently, both parties filed motions for summary judgment which are now before the Court. [27, 29].

---

[4] Plaintiff avers that she paid an unidentified "young man (and others) $8.00/hr. to assist my husband four to five hours per day, five days per week. I therefore paid these extra ordinary costs, from my retirement benefits//pension income approximately $19,000.00 to $20,000.00 during the year." (*Id.*, Pl. Aff., ¶9). Although her counsel, who is also her son, represents that he is "personally aware that [Plaintiff] began paying for assistance for her husband prior to her 1995 retirement and continued doing so until his 2008 death," she provides no documentary evidence to substantiate these payments.

[5] The decision stated that "[n]o comments or additional evidence have been received." (Tr. 6).

5

### B. Legal Standard

As noted above, a claimant receiving a government pension, who was eligible for retirement between December 1982 and June 1983, will be subject to the GPO unless one of the exceptions in 20 C.F.R. § 404.408a(b) applies. Plaintiff argues that the exception in paragraph (b)(3) applies to her case. That portion of the regulation states:

> The reduction does not apply * * * (3) If you were receiving or were eligible . . . to receive a Government pension for one or more months before July 1983, and you meet the dependency test of one-half support that was applied to claimants for husband's and widower's benefits in 1977, even though you don't claim benefits, and you don't actually meet the requirements for receiving benefits until a later month.

20 C.F.R. § 404.408a(b)(3). Considered in this analysis is "any income which is available to you for your support whether or not that income is actually used for your ordinary living costs. Ordinary living costs are the costs for your food, shelter, routine medical care, and similar necessities." 20 C.F.R. § 404.366(b).

According to the Program Operations Manual System ("POMS"), whether a wage-earner supplied one-half of a claimant's support is determined presumptively through the "pooled-fund" method. POMS RS 01301.200B; RS 01301.220. The pooled-fund method "creates a rebuttable presumption that all income coming into a household is pooled for the support of the household and that each member of the household shares equally in the funds used for support." *Id.*; *see also Drombetta v. Sec. of Health and Human Servs.*, 845 F.2d 607 (6th Cir. 1987). "This presumption is rebutted by evidence that the household income was not pooled or evidence indicating that all income for support was not shared equally." *Id.*

One example is where a claimant alleges that his or her income was not used entirely or at all for his or her own support. In such instances, the regulations require the decision-maker to "determine what the income is used for." POMS RS 01301.186. "If the income was available

6

for support purposes but the claimant chose to use it otherwise, you must consider the income in the support picture." *Id.* The example cited in the POMS provision involves using the income for investment purposes. *Id.*

However, the POMS provision acknowledges that where reallocation of income was based on "need" or "on a predetermined situation, e.g. alimony or child support," the income would not be considered when calculating one-half support. *Id.* In such situations, including where there are extraordinary medical expenses, the agency applies the procedure under POMS RS 01301.190(F). That procedure requires the agency to:

> (1) Compare the claimant's income and the insured person's net contribution.
>
> (2) Determine the cost of the claimant's support.
>
> (3) Determine the claimant's contribution toward his/her own support.
>
> (4) Determine the amount of the [insured person's] contribution toward the claimant's support.
>
> (5) Compare the amount in step 4 with the amount in step 3.

POMS RS 01301.190(F). If the amount calculated in step 4 is larger than that calculated in step 3, the one-half support requirement has been met. *Id.*

### C. Analysis

Plaintiff moves for summary judgment essentially arguing that the Appeals Council erred in applying the pooled-fund method despite Plaintiff's timely submission of evidence that she did not pool funds with her husband and that a substantial portion of her income went to something other than her own support. She argues that had the correct method been applied, the Appeals Council would have found that the one-half support test was satisfied in this case.

The Commissioner moves for summary judgment arguing that the Appeals Council

correctly applied the pooled-fund method in the absence of evidence to show that funds were not pooled. The Commissioner argues that the Appeals Council's failure to consider Plaintiff's evidence (the letter/affidavit) is the result of it not having been timely submitted, and that Plaintiff has failed to argue that the case should be remanded pursuant to Sentence 6, nor has she satisfied that provision's elements. Finally, the Commissioner argues that even if the Appeals Council erred in not considering Plaintiff's proffered evidence and in applying the pooled-fund method to her claim, any error was harmless because "even if the cost of Plaintiff's husband's in-home care was the amount she claims, she still would not have satisfied the one-half support test." (Def. Mot. at 29).

### 1.     *Timeliness of Plaintiff's Affidavit*

The Court first addresses whether Plaintiff's June 8, 2012 submission to the Appeals Council was timely. The Commissioner argues that it was not, apparently because the Appeals Council did not acknowledge having received it before it rendered its decision on June 15, 2012. As a result, the Commissioner argues that the only way it could now be considered is pursuant to a Sentence 6 remand, and Plaintiff has not proffered evidence exhibiting good cause as to why the submission could not have been made earlier. However, the Commissioner's argument appears to ignore the fact that the Appeals Council itself, in its May 9, 2012 notice, afforded Plaintiff 30 days to supplement the record, or until June 8, 2012. Simply because she may have waited until the last day of that period to do so does not render her submission untimely, nor does it implicate a requirement for her to show good cause why the submission was not made earlier. The fact of the matter is Plaintiff had 30 days to supplement the record, and to the extent she submitted her evidence on the thirtieth day it should have been considered by the Appeals Council in its decision.

This does not necessarily end the inquiry, however. While Plaintiff argues in her brief that she submitted the evidence on June 8, 2012, "by fax, U.S. Mail and service on the local Social Security Office," (Plf. Mot. at 3), she fails to attach proofs of service to her brief, only attaching the letter itself along with the signed affidavit. (*Id.* Ex. 2). Because she has not properly shown that her evidence was submitted timely, there is at least a potential issue of fact as to whether the evidence was timely submitted and thus whether the Appeals Council erred in not considering it. The Court need not resolve that issue, however, because it is not dispositive of the instant dispute. For the reasons discussed below, even assuming Plaintiff properly submitted her affidavit on June 8, 2012, any potential error committed by the Appeals Council in not considering it was harmless, because, even accepting Plaintiff's averments as true, she is not exempted from the GPO.

### 2. *Application of the GPO*

As outlined above, claimants seeking survivor benefits who themselves receive a government pension from non-covered employment will have their benefits reduced, potentially to zero, based on that pension, unless an exception applies. 20 C.F.R. §§ 404.408a(a); 404.408a(d)(2). The applicable exception here states that the GPO will not apply if the claimant was eligible for her government pension prior to July 1983 and she shows that she received at least one half of her support from her deceased spouse. 20 C.F.R. § 404.408a(b)(3). *See also* 20 C.F.R. § 404.408a(c) ("The one-half support test. * * * for a man or a woman to meet the exception in paragraph (b)(3) of this section, he or she must meet a one-half support test. One-half support is defined in § 404.366 of this part."). The test must be met either "(i) At the time [the insured] became entitled to old-age insurance benefits; or (ii) If deceased, at the time of [the insured's] death." 20 C.F.R. §404.408a(c)(2).

The parties no longer dispute whether Plaintiff became eligible for her pension prior to

9

July 1983; the only question is whether she meets the one-half support test, allowing her an exemption from the GPO. Here, it is clear that, applying either of the methods used to calculate one-half support, Plaintiff does not meet this test, and thus is not exempt from application of the GPO.

### a. Pooled-Fund Method

As noted above, the principal method for determining whether a claimant satisfies the one-half support exception is called the "pooled-fund method." The pooled-fund method combines the spouses' income, either at the time the insured person was eligible for retirement, or at the time of death, and divides that amount equally between the spouses. Social Security Administration Program Operations Manual System (POMS) RS 01301.200(A) ("When husband and wife are living together, assume they share equally, in terms of support, in all income received into the household regardless of their individual incomes."); POMS RS 01301.190(B)(1) ("General information on pooled fund method [-] Under this method, we assume that the household pools all income for its support and that each member shares equally in the funds used for support. When using the pooled fund method, we need to determine all income coming into the household."). If the claimant's income is one half or less than this amount at either time, the conclusion is drawn that she received one-half support from the insured person. *Id.* This method has been approved by the Sixth Circuit, and, as explained above, "creates a rebuttable presumption that all income coming into a household is pooled for the support of the household and that each member of the household shares equally in the funds used for support." *Drombetta*, 845 F.2d at 609-610 (citing POMS RS 01301.200B, RS 01301.220.).

The Court agrees with the Appeals Council's finding that Plaintiff does not satisfy the

one-half support exception when the general pooled-fund method is applied. (Tr. 6-8). It is undisputed that at the time of her husband's death Plaintiff's income was $28,892 and her husband's was $20,777.60. (Tr. 7). Adding those two amounts together totals $49,669.60. Under a pooled-fund method, then, Plaintiff and her husband's individual support needs would equal half of the total amount pooled, or $24,834.80 each. Since Plaintiff's income was more than one half of this amount, she does not satisfy the one-half support exception to the GPO using this formula.

### b. POMS RS 01301.190(F)

Plaintiff argues that the Appeals Council should not have used the pooled-fund method to calculate whether or not she met the exception, given her averments that she paid extraordinary medical expenses for her husband's care out of her own income. Plaintiff argues that instead the Appeals Council should have applied POMS RS 01301.190(F), which, as outlined above, takes such expenses into consideration. However, even applying that regulation, Plaintiff would not satisfy the one-half support test.[6]

First, the Commissioner takes issue with Plaintiff's claim that the approximately $10,000 a year she spent on her husband's in-home care should be deducted from her income. The Commissioner argues that RS 01301.186, which deals with claims that an individual's income was not fully available for his or her support, does not exempt money used, as it was in this case, voluntarily for the care of the insured person. Rather, the Commissioner argues, that provision only allows such income to be excluded from the calculation where it is based on either need or predetermined circumstances (e.g., alimony or child support), neither of which exist here as it

---

[6] The Court notes that other than self-serving statements, Plaintiff has provided no evidence that her and her husband's funds were not actually pooled. For instance, Plaintiff presented no evidence that she and her husband maintained separate bank accounts and/or that the funds allegedly paid for her husband's in-home care came directly from her own income.

11

was Plaintiff's choice to obtain in-home care for her husband.

The Court agrees with the Commissioner's conclusion, albeit for a different reason. If, as Plaintiff argues here, a claimant were able to keep separate her income and then use that income in whole or in large part to pay for the medical care of her spouse through whom she later attempts to claim survivor benefits, she could essentially circumvent the one-half support rule, gaining a windfall benefit where she would otherwise be prevented from obtaining any benefit if the spouse's own income, or the couple's pooled incomes, had been used for his medical care. By treating the claimant's "separate" income as having been substantially or wholly spent on the extraordinary medical expenses of her spouse, the result would inevitably be that the spouse, who now has a surplus of income not being applied to his own care, is providing more than one-half support to the claimant whose income was used exclusively for the spouse's care. While this exact scenario does not arise here (since, as discussed below, subtracting from Plaintiff's income the cost of her husband's care still does not result in a calculation that satisfies the one-half support test), it is worth discussing because the POMS and applicable regulations were clearly not intended to be manipulated in that manner to provide windfall benefits awards to a claimant.[7]

---

[7] The instant issue is distinguishable from the situation where one spouse's income goes to pay alimony or child support that the other spouse has no obligation to pay or underlying connection to. POMS RS 1301.186. *See also supra* at 7. One spouse's fulfillment of those obligations does not involve the type of payment "gerrymandering" Plaintiff asks the Court to accept here. Although such factual matters (i.e., who paid what bills) would typically be reserved for the ALJ, *Sims v. Apfel*, 530 U.S. 103, 111 (2000) ("[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits."), the Court views this issue as a legal one. Indeed, the Court cannot conceive of a situation where, in a two-income household, the payment of the spouse's extraordinary medical expenses from the income of the claimant (*i.e,*. the other spouse) should enable the claimant to exclude that amount from her income in order to satisfy the one-half support test. To allow otherwise would be to essentially render the relevant regulatory framework meaningless. The Court declines to adopt an approach that yields such a result.

Finally, as the Court has just noted, even under the method urged by Plaintiff, the numbers simply do not add up. That is, even if Plaintiff is correct that the cost of her husband's in-home care should be subtracted from her income pursuant to RS 01301.190(F), she would still fail to satisfy the one-half support test. Using that method of calculation, Plaintiff's contribution to the family would have been $18,492 ($28,492 minus the greatest possible amount of in-home care costs, $10,400). (Plf. Mot. at 5). Her husband's contribution would have been $20,777.60. Adding those two numbers together and dividing them by two results in a finding that each person would have support costs of $19,634.80. Thus, Plaintiff would contribute $18,492 to her own support and her husband would contribute $1,142.80 to her support to make up the difference. Because Plaintiff's husband's contribution toward her support would not exceed her own contribution, the one-half support exception would not apply.[8] Because the one-half support exception does not apply to Plaintiff, she remains subject to the GPO. Thus, any error by the Appeals Council in the method it used to make that determination was harmless.

## III.  CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion

---

[8] Plaintiff seems to suggest that the Court should simply compare her net income to her husband's and find that since her husband's is larger he provides more than half of the family's and therefore, her, support. This is simply not what POMS RS 01301.190(F) instructs. *See supra* at 7. In *Jepson v. U.S. Dept. of Health & Human Servs.*, 977 F.2d 911, 914 (4th Cir.1992), the court held that the Commissioner acted properly by pooling all the household income to determine the amount available for the support of each member but then treating the claimant's income as available only to her when determining whether she derived more than half her support from the deceased wage-earner. Even the dissenter in *Jepson* (who felt the approach was not fair where the claimant's income went to support multiple other individuals in the home) agreed that "[w]hen a family consists of only two wage earners, the [foregoing method] is reasonable." *Id.* at 915 (citing with approval *Drombetta*, 845 F.2d at 610). Based on the above calculations, in order for the one-half support exception to apply, Plaintiff's husband's contribution would have to have been at least $9,817.40, or one half of her calculated support costs. Put another way, her husband would have had to contribute two-thirds of the couple's total support before the exception would apply.

13

for Summary Judgment **[29]** be **GRANTED**, Plaintiff's Motion **[27]** be **DENIED**, and this case be **AFFIRMED**.

Dated: October 23, 2013  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 23, 2013.

s/Felicia M. Moses
FELICIA M. MOSES
Case Manager